UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIE BUELL,

     Plaintiff,

v.                            Case No. 8:06-cv-1791-T-26MSS

DIRECT GENERAL INSURANCE
AGENCY, INC., et al.,

     Defendant.

_____/

## PLAINTIFFS' THIRD AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

     Plaintiffs, Bobbie Anderson-Sparks, James Cartwright, Jamey Robbins-Gleason, Greg Groover, Sammantha Helmick and Diane Panton, individually and as Class Representatives hereby sue the Defendants: AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, DIRECT GENERAL CORPORATION, DIRECT GENERAL INSURANCE AGENCY, INC., DIRECT GENERAL INSURANCE COMPANY, DIRECT GENERAL LIFE INSURANCE COMPANY, and UNDERWRITERS AT LLOYD'S, LONDON, and allege:

### JURISDICTION AND VENUE

     1.     That this Court has subject matter jurisdiction of the common law claims and state law claims alleged herein pursuant to the Class Action Fairness Act of 2005 because the amount in controversy exceeds the sum of $5,000,000.00 (exclusive of interest and costs) and at least one member of the class of plaintiffs is a citizen of a State

different from the Defendant(s).  Please see Defendants' Notice of Removal (Docket No.: 1).

2.     Venue is proper in the Middle District of Florida because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within this District, one or more of the Plaintiffs reside in this District and Defendants are subject to personal jurisdiction in this District because Defendants transact insurance in the District in accordance with *F.S. 624.10*.  Defendants, in connection with the acts and course of conduct alleged herein have directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, wires and telephone to solicit, induce, negotiate, effectuate and transact matters prior to and subsequent to effectuation of contacts of insurance, and matters arising out of same. Please see Defendants' Notice of Removal (Docket No.: 1).

## **PARTIES**

3.     Plaintiff, BOBBIE (ANDERSON) SPARKS is an individual who is a resident of Florida and is *sui juris*.

4.     Plaintiff, JAMES CARTWRIGHT is an individual who is a resident of Florida and is *sui juris*.

5.     Plaintiff, JAMEY GLEASON is an individual who is a resident of Florida and is *sui juris*.

6.     Plaintiff, GREG GROOVER is an individual who is a resident of Florida and is *sui juris*.

7.      Plaintiff, SAMMANTHA HELMICK is an individual who is a resident of Florida and is *sui juris*.

8.      Plaintiff, DIANE PANTON is an individual who is a resident of Florida and is *sui juris*.

9.      AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA is a corporation transacting business throughout the state of Florida with a principal place of business of 11222 Quail Roost Dr., Miami, Florida 33157.   AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA is involved in the transaction of insurance in the State of Florida as defined under *F.S. 624.10* and in addition to the solicitation, preliminary negotiations and effectuation and transaction of insurance contacts covered thereunder.

10.     Defendant, DIRECT GENERAL CORPORATION is a corporation transacting business throughout the State of Florida with a principal place of business of 1281 Murfreesboro Road, Nashville, Tennessee 37217.   DIRECT GENERAL is involved in the transaction of insurance in the State of Florida as defined under *F.S. 624.10* and in addition to the solicitation, preliminary negotiations and effectuation and transaction of insurance contacts covered thereunder, solicits job applicants and defends workers' compensation claims in the State of Florida.

11.     Defendant, DIRECT GENERAL INSURANCE AGENCY, INC. is a corporation transacting business throughout the state of Florida with a principal place of business of 1281 Murfreesboro Rd. Nashville, Tennessee 37217, and is involved in the transaction of insurance as defined under *F.S. 624.10*.     DIRECT GENERAL

3

INSURANCE AGENCY, INC. has a principal address in Nashville, Tennessee.

12.     DIRECT GENERAL INSURANCE COMPANY is a corporation transacting business throughout the State of Florida with a principal place of business of 424 Hayne Avenue, Aiken, South Carolina 29801.  DIRECT GENERAL INSURANCE COMPANY is involved in the transaction of insurance in the State of Florida as defined under *F.S. 624.10* and in addition to the solicitation, preliminary negotiations and effectuation and transaction of insurance contacts covered thereunder.

13.     Defendant, DIRECT GENERAL LIFE INSURANCE COMPANY, is a corporation transacting business throughout the State of Florida with a principal place of business of 424 Hayne Avenue. Aiken, South Carolnia 29801.  DIRECT GENERAL LIFE INSURANCE COMPANY is involved in the transaction of insurance in the State of Florida as defined under *F.S. 624.10* and in addition to the solicitation, preliminary negotiations and effectuation and transaction of insurance contacts covered thereunder.

14.     Defendant, UNDERWRITERS AT LLOYD'S, LONDON is a entity transacting Surplus Line Insurance business throughout the State of Florida with a principal place of business of One Lime Street, London England, 00 EC3M7HA, United Kingdom.  LLOYD'S is involved in the transaction of surplus lines insurance in the State of Florida as defined under *F.S. 624.10* and in addition to the solicitation, preliminary negotiations and effectuation and transaction of insurance contacts covered thereunder.

## NATURE OF THE CASE AND BUSINESS ENVIRONMENT IN WHICH THE ILLEGAL ACTIONS AND VIOLATIONS AT ISSUE HAVE OCCURRED

15.     DIRECT GENERAL CORPORATION is the holding / parent company and alter

ego of its 100% wholly owned subsidiaries which include DIRECT GENERAL INSURANCE AGENCY, INC., DIRECT GENERAL INSURANCE COMPANY, DIRECT GENERAL LIFE INSURANCE COMPANY and DIRECT GENERAL FINANCIAL SERVICES, INC.  DIRECT GENERAL CORPORATION files a consolidated tax return and derives its total income from its wholly owned subsidiaries.  Please see a copy of portions of the 10K Securities and Exchange Commission Annual Report filed by DIRECT GENERAL, a copy of which is attached hereto as Composite Exhibit "C."

16.     Direct General and/or its subsidiaries sell substandard personal automobile insurance issued by DIRECT GENERAL INSURANCE COMPANY, term life insurance issued by DIRECT GENERAL LIFE INSURANCE COMPANY, and ancillary insurance products in Florida and throughout the Southeastern United States. The ancillary insurance products DIRECT GENERAL markets and sells include:

1)  **Travel Protection Plan policy** issued by American Bankers Insurance Company of Florida for $60.00;  (which includes among other things, *$10,000 in bail bonds insurance*);

2)  **Accident Medical Protection Plan policy** (which has otherwise been known as a *Hospital Indemnity Plan and which includes among other things Credit Card Insurance*) issued by UNDERWRITERS AT LLOYD'S, LONDON **(a surplus lines carrier)** for $110.00;

3)  **Accidental Death Coverage** issued by UNDERWRITERS AT LLOYD'S, LONDON for $20.00;

4)  **Life Insurance Policy** issued by DIRECT GENERAL LIFE INSURANCE COMPANY for $98.00, as part of the same transaction**,** to Plaintiff and other

consumers as part of the same transaction.

17.     The 10K Securities and Exchange Commission Annual Report filed by Direct General which is attached hereto as Composite Exhibit "C" describes DIRECT GENERAL CORPORATION'S Model Business Plan in the following way:

*"Our Business Model*
*Our model emphasizes the distribution of our products and services through neighborhood sales offices staffed by employee-agents as opposed to commissioned agents. In contrast to the independent agency distribution model relied upon by many of our insurance competitors, our business model allows us to generate significant revenue from sources other than premiums from our core product, non-standard personal automobile insurance. These additional revenues include premium finance revenues, commissions from the sale of non-core insurance products and other revenues, none of which entails insurance underwriting risk. In the independent agency distribution model, these additional revenues would typically be paid to an unaffiliated premium finance company, independent agent, or other third party.*

*Our Products and Services*
*Our core business involves issuing non-standard personal automobile insurance policies. These policies, which generally are issued for the minimum limits of coverage required by state laws, provide coverage to drivers who generally cannot obtain insurance from standard carriers due to a variety of factors, including the lack of flexible payment plans, the failure to maintain continuous coverage, age, prior accidents, driving violations, occupation and type of vehicle.*

*Through our premium finance subsidiaries, we finance the majority of the insurance policies that we sell. Premium finance involves making a loan to the customer backed by the unearned portion of the insurance premiums being financed, which is the portion of the loan attributable to future periods of coverage. We offer our customers a variety of flexible payment plans that allow for low down payments which we believe is a significant factor our customers consider when purchasing insurance.*

*We offer a variety of other insurance products designed to benefit and appeal to purchasers of our non-standard personal automobile insurance policies, including term life insurance offered through our wholly-owned life insurance subsidiaries, as well as vehicle protection insurance, travel protection insurance and hospital indemnity insurance underwritten by unaffiliated insurers for which we receive a commission but do not bear insurance underwriting risk".*

*Our Products and Services*
  *Non-Standard Personal Automobile Insurance*

   *Non-standard personal automobile insurance policies constitute our core product. These policies, which generally are issued for the minimum limits of coverage required by state laws, provide coverage to drivers who cannot obtain insurance from standard carriers due to a variety of factors, including the lack of flexible payment plans, the failure to maintain continuous coverage, age, prior accidents, driving violations, occupation and type of vehicle. In general, customers in the non-standard market have higher average premiums for a comparable amount of coverage than* customers who qualify for the standard market. The higher average premiums compared to the standard market generally result from an increased

6

frequency of losses, which is partially offset by the lower severity of losses resulting from lower limits of coverage.

We believe that the majority of our customers do not qualify for insurance from standard carriers because of financial reasons, including the failure to maintain continuous coverage. Historically, over 75% of the drivers included under our insurance policies had no points associated with moving violations on their driving record at the time they purchased their policy. "

18.     DIRECT   GENERAL   CORPORATION   and/or   DIRECT   GENERAL INSURANCE AGENCY, INC., deliberately target Florida consumers who do not qualify for insurance from standard carriers for the sale of substandard automobile insurance policies and to obtain commissions from same for adding on ancillary insurance products.   Per the 10k Annual Report of DIRECT GENERAL CORPORATION (attached hereto as Composite Exhibit "C."), DIRECT   GENERAL   employs   a   Model   Business   Plan   which   generates   approximately $47,000,000.00 per year from the "sale" of ancillary products exclusive of the premium and finance revenues generated from the sale of its substandard automobile insurance products.

19.     DIRECT GENERAL'S network of captive insurance agencies consists of over 400 "neighborhood" locations in the Southeastern United States and over 75 "neighborhood" locations within the state of Florida. DIRECT GENERAL INSURANCE COMPANY'S substandard automobile insurance policies are provided to Florida consumers along with ancillary insurance products or "optional coverages" as part of the same transaction.   DIRECT GENERAL CORPORATION and DIRECT GENERAL INSURANCE AGENCY, INC., both receive commissions and revenues generated from "sliding/adding on" ancillary insurance products (of other companies) equal to almost $47,000,000.00 last year alone.

20.     The ancillary insurance product policies (with the exception of the term life policy issued by DIRECT GENERAL LIFE INSURANCE COMPANY) are issued by wholly independent   corporations   which   include   American   Bankers   Insurance   Company   and

UNDERWRITERS AT LLOYD'S, LONDON.

21.     *F.S. 626.9541(z)* provides that "Sliding" is the act or practice of:

*1.     Representing to the applicant that a specific ancillary coverage or produce is required by law in conjunction with the purchase of insurance when such coverage or product is not required; or*

*2.     Representing to the applicant that a specific ancillary coverage or product is included in the policy applied for without an additional charge when such charge is required; or*

*3.     Charging an applicant for a specific ancillary coverage or product, in addition to the cost of the insurance coverage applied for, without the informed consent of the applicant.*

22.     Defendant, DIRECT GENERAL INSURANCE AGENCY, INC. was previously the target of a "Special Target Investigation" by the Georgia Department of Insurance and as a result entered into a Consent Order with the Georgia Department of Insurance wherein DIRECT GENERAL INSURANCE AGENCY, INC. agreed that it would not engage in future "Sliding" in the State of Georgia.

23.     That DIRECT GENERAL INSURANCE AGENCY, INC. also entered into a Settlement Stipulation for Consent Order with the Florida Department of Insurance on August 6, 1998 wherein DIRECT GENERAL INSURANCE AGENCY, INC. agreed to the following:

*RESPONDENT will not engage in sliding which is a violation of section 626.9541(1)(z) F.S. RESPONDENT further agrees to abide by and comply with all provisions of the Florida Insurance Code and the Rules and Regulations of the Florida Department of Insurance.* A copy of said Settlement Agreement and Consent Order between DIRECT GENERAL INSURANCE AGENCY, INC. and the Florida Department of Insurance is attached hereto as Composite Exhibit "D."

24.     Defendants breached their obligations to Plaintiffs and other class members by **automatically "sliding"** (without the knowledge and/or informed consent of the Plaintiffs) the ancillary products or insurance coverages at issue, as part of the same transaction concerning the

sale of automobile insurance coverage.

25.    Subsequent to the entry of the August 6, 1998 Settlement Agreement and Consent Order, the Florida Attorney General has recommended and the Florida Department of Financial Services (formerly the Florida Department of Insurance) has begun a Special Target Investigation of Direct General and has begun to file Administrative Complaints against a multitude of DIRECT GENERAL INSURANCE AGENCY'S agents for "sliding" and Orders have been entered revoking and/or suspending the licenses of same.  An exemplar copy of some said Administrative Complaints and Consent Orders and Affidavits of other Class Members (who are not named Plaintiffs herein) are attached hereto as Composite Exhibit "B."

26.    DIRECT GENERAL pays the attorneys' fees and costs for its employee agents who have been and/or are currently being investigated for "sliding" by The Florida Department of Financial Services.

27.    Defendants (DIRECT GENERAL CORPORATION and DIRECT GENERAL INSURANCE AGENCY, INC.) have created an organizational structure and working environment for employees / agents which promotes the "sliding" of ancillary insurance products onto the substandard automobile insurance policies being sold to Florida consumers.  The "sliding" of ancillary insurance products is done without full disclosure and/or the informed consent of Florida consumers and has thus been created and maintained by Defendants.

28.    More specifically, the business plan and environment of DIRECT GENERAL CORPORATION and DIRECT GENERAL INSURANCE AGENCY, INC., are such that the employee agents who staff the local neighborhood offices and sell automobile insurance products to Florida consumers are subject to daily, weekly, monthly, and quarterly monitoring of the exact number and dollar amount of ancillary insurance products sold and the employee

9

agents must attain a certain percentage of "sales" in order to qualify for salary increases, promotions or even to retain their employment.  Please see the May 16, 2001 e-mail document attached hereto as part of Composite Exhibit "A," which document is a memo copied to Jackie Adair, the Vice President of DIRECT GENERAL INSURANCE AGENCY, INC.

29.     The exact number of and dollar amount of ancillary insurance products generated is monitored often on a daily basis and/or weekly basis with memoranda being sent to and viewed by all supervisory staff and other employee agents, detailing the figures and critiquing the performance of the employee agents.  Please see the exemplar attached hereto as part of Composite Exhibit "A."

30.     DIRECT  GENERAL  CORPORATION  and/or  DIRECT  GENERAL INSURANCE AGENCY, INC., have also approved a system wherein managers and employee agents are given significant commissions, and/or cash bonuses, prizes and trips for the generation of ancillary insurance product "sales" which has and continues to promote the "sliding" of ancillary insurance products onto the automobile policies of Plaintiffs and other Class Members.  Please see the documents attached hereto as Composite Exhibit "A."

## DIRECT GENERAL DEFENDANTS HAVE PROCURED ILLEGAL CONTRACTS  THROUGH WILLFUL VIOLATIONS OF FLORIDA LAW AND THE PLAINTIFFS AND THE CLASS ARE ENTITLED TO RESTITUTION OF THE AMOUNTS PAID

31.     The ancillary insurance products issued to Plaintiffs and other Florida consumers are required to be issued by a licensed insurance company, through licensed and appointed agents.  More specifically *F.S. 624.11* provides that no person shall transact insurance in this state, " . . . without complying with the applicable provisions of this code." which includes, *inter*

*alia*, Chapters 624-632, 634, 635, 636, 641, 642, 648, and 651.  *F.S. 626.104* states that Insurers are required to "appoint" licensed agents for this purpose, ". . . to transact insurance . . . on [their] behalf."  Pursuant to *F.S. 626.451*, the insurers are required to certify the fitness of their appointed agents, *F.S. 626.451(2)*, whose appointment is subject to prior issuance of the appropriate licenses by the Florida Department of Financial Services (formerly known as the Florida Department of Insurance).  *F.S. 626.451(1)*.  The insurers are bound by and liable for the acts of their appointed agents.  *F.S. 626.451(3)* provides that ". . . [I]n the appointment of an agent . . . the appointing entity [Insurers] shall also certify therein that it is willing to be bound by the acts of the agent . . . within the scope of his employment."  Moreover the common law doctrine of respondeat superior also renders the Defendants vicariously liable for the acts of their agents within the scope of their duties, whether or not they are appointed and licensed pursuant to the Insurance Code.

32.    *F.S. 626.311(4)* provides that, "No agent licensee shall transact or attempt to transact under his or her license any line of insurance for which he or she does not have currently in force of record with the department an appointment with an authorized insurer."  *F.S. 626.112(2)* provides that, "No agent or customer service representative shall solicit or otherwise transact as agent or customer representative, or represent or hold himself or herself out to be an agent or customer representative as to, any kind or kinds of insurance as to which he or she is not then licensed and appointed."

33.    Defendants have employed and retained employee/agents to staff DIRECT GENERAL CORPORATION'S and DIRECT GENERAL INSURANCE AGENCY'S neighborhood offices, who are not fully licensed and appointed in accordance with Florida law, to sell the ancillary insurance products at issue.  More specifically, *F.S. 626.311* requires

insurance agents to have not only licenses for each particular type of insurance sold to Florida Consumers but to be appointed by each insurance company for which the agent transacts insurance.  Defendants have employed and/or retained employee agents who do not possess the specific licenses and/or appointments required to sell the ancillary insurance products that were "slid" onto the policies of the Plaintiffs and the Class Members.

34.     Defendants' willful violations of the Florida Insurance Code and Florida laws render the ancillary insurance contracts at issue illegal.  *Town of Boca Raton v. Raulerson*, 146 So. 576 (Fla. 1933); *Stewart v. Stearns & Culver Lumber Co.*, 48 So. 19 (Fla. 1908); *Singleton v. Foreman*, 435 F. 2d 962 (5th Cir. 1970); *Katz v. Woltin*, 765 So. 2d 279 (Fla. 4th DCA 2000); *Am. Mut. Fire Ins. Co. v. Illington*, 213 So. 2d 747 (Fla. 2d DCA 1968).  Defendants' knowing and willful violations of the Florida Insurance Code and Florida laws also violated *F.S.* 624.15 which provides criminal penalties as well as the suspension and/or revocation of the Defendants' licenses and because of such, the contracts for the ancillary insurance products at issue are void *ab initio*, *Raulerson*, *supra*.

35.     Plaintiffs and the Florida Class members are entitled to restitution of the amounts they paid to Defendants as premiums, without setoff, because they are innocent parties to the contracts that are illegal and void.  *E.g. Raulerson*, 146 So. at 576-77; *Singelton*, 435 F. 2d at 969.

## CLASS ACTION ALLEGATIONS

36.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23 and the Class Action Fairness Act of 2005.

37.     The Class consists of all Florida consumers who were signed up through the methods prohibited by *F.S.* 626.9541(z) for ancillary products which include the following:

12

        1)       **Travel Protection Plan policy**;

        2)       **Accident Medical Protection Plan policy**;

        3)       **Accidental Death Coverage**;

        4)       **Life Insurance Policy;**

as part of the same transaction in which the consumers were seeking to buy automobile insurance only from the Defendants.

38.     The Class of persons affected by Defendants' unlawful acts consists of thousands of people, and are so numerous that joinder of all Class Members is impracticable and resolution through the class action mechanism is therefore appropriate under Rule 23.   The unlawful "sales" practices and defective disclosures alleged herein were standardized practices employed by the Defendants and resulted in unlawful sales of ancillary insurance products to Plaintiffs and all Class Members.

39.     There are common issues of law and fact in this cause of action within the parameters of Rule 23 of the Federal Rules of Civil Procedure, and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23 and same include but are not limited to:

a.     Whether Defendants' employees/agents signed up the Class (through the methods prohibited by *F.S. 626.9541(z)* for the ancillary insurance products at issue;

b.     Whether DIRECT GENERAL CORPORATION and/or DIRECT GENERAL INSURANCE AGENCY, INC. have employed and/or retained employee/agents to staff its neighborhood offices who are not fully licensed and appointed in accordance with Florida law to sell the ancillary insurance products at issue.

c.     Whether the Defendants created, promoted and/or essentially allowed or

fostered a business environment in which employees and/or agents were encouraged to "slide" ancillary insurance products onto the automobile insurance polices of Class Members.

d.      Whether the Defendants neglected to or refused to respond to and correct matters relating to Complaints of "sliding" that were made by Class Members.

e.      Whether Defendants are vicariously liable for the acts of their agents pursuant to the common law doctrine of *respondeat superior*, and/or *F.S. 626.451(3)*.

f.      Whether the contracts Defendants procured through "sales" of ancillary insurance products to Plaintiffs and the Class Members in violation of Florida law are illegal, requiring restitution by Defendants and the disgorgement of all premiums paid pursuant to those contracts, together with interest.

g.      Whether Plaintiff and the Class Members are entitled to injunctive, declaratory or other equitable relief to require Defendants in the future to obey and comply with applicable law, including Florida law, in connection with the sale and maintenance of the ancillary insurance at issue.

40.     Plaintiffs claims are typical of the claims of the Class Members and they will fairly and adequately represent and protect the interests of all the Class pursuant to Rule 23.

41.     Plaintiffs interests are consistent with and not antagonistic to the interests of the other Class Members and in accord with Rule 23.

42.     Resolution in accordance with Rule 23 through the instant Class Action lawsuit is superior to resolution through individual lawsuits in this case because it is desirable to concentrate the litigation of the Class Members' claims into one forum in order to conserve party and judicial resources and facilitate the consistency of adjudications.  Furthermore, as damages suffered by individual Class Members may be small (in contrast to the time and expense of

litigation) their interests in maintaining separate individual lawsuits is questionable and the expense and time involved in litigation of the instant controversy makes it impracticable for them to seek individual redress for the illegalities at issue.  Plaintiffs know of no difficulty that would be encountered in management of the instant case that would preclude its maintenance as a class action.

43.    Defendants have acted on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole and in accordance with that contemplated under Rule 23.

### COUNT I.: COMMON LAW DISGORGEMENT AND RESTITUTION OF PREMIUMS COLLECTED PURSUANT TO ILLEGAL CONTRACTS OF INSURANCE PROCURED IN VIOLATION OF FLORIDA LAW

44.    The allegations of paragraphs 1-43 of this Complaint are incorporated herein by reference.

45.    Plaintiffs and the Class Members were signed up through the methods prohibited by *F.S. 626.9541(z)* for ancillary insurance products.

46.    Defendants' employees and/or agents signed up Plaintiffs and the Class Members for the ancillary insurance products at issue in violation of Florida law by doing one or more of the following as prohibited by *F.S. 626.9541(z)*:

1.    Representing to the applicant that a specific ancillary coverage or produce is required by law in conjunction with the purchase of insurance when such coverage or product is not required; and/or

2.    Representing to the applicant that a specific ancillary coverage or product is included in the policy applied for without an additional charge when such charge is required; and/or

3.    Charging an applicant for a specific ancillary coverage or product, in addition to the cost of the insurance coverage applied for, without the informed consent of the applicant.

15

47.     All Defendants reaped financial benefits in the form of revenues, commissions, fees and premium income from their sale of the ancillary insurance products to the Plaintiffs and Class Members.

48.     Defendants are vicariously liable for the acts of their agents pursuant to the common law doctrine of *respondeat superior* and/or *F.S. 626.451(3)*.

49.     As a result of the illegal nature in which the ancillary insurance contracts at issue were procured, said contracts are void *ab initio*.

50.     All Defendants received revenue and/or commissions and/or premium income pursuant to the illegal contracts that resulted from the illegal sales practices of Defendants' employees and/or agents.

51.     Defendants are required to disgorge and make restitution to Plaintiffs and the Class Members of all premiums paid under the void ancillary insurance product contracts, together with attorneys' fees and costs pursuant to *F.S. 627.428*, interest and such other or further relief as is appropriate.  Alternatively, if such contracts are found to be merely illegal and not void, Defendants are required to disgorge and make restitution to Plaintiff and the Class Members of their gross profit resulting from such illegal contracts.

## COUNT II.: MONEY HAD AND RECEIVED

52.     Plaintiffs reallege the general allegations of paragraphs 1 through 43 herein.

53.     Defendants employees and/or agents signed up Plaintiffs and the Class Members for the add-on ancillary insurance products at issue in violation of Florida law by doing one or more of the following as prohibited by *F.S. 626.9541(z)*:

1.     Representing to the applicant that a specific ancillary coverage or produce

is required by law in conjunction with the purchase of insurance when such coverage or product is not required; and/or

2.     Representing to the applicant that a specific ancillary coverage or product is included in the policy applied for without an additional charge when such charge is required; and/or

3.     Charging an applicant for a specific ancillary coverage or product, in addition to the cost of the insurance coverage applied for, without the informed consent of the applicant.

54.     As a result of the actions of Defendants' employees and/or agents, the Plaintiffs and the Class Members are innocent parties to contracts which are illegal and *void ab initio* and have paid unlawful premiums as result.

55.     Defendants have received and retained money and/or received and retained revenue, and/or premiums and/or commissions and/or other economic benefits from the illegal add-on ancillary insurance contracts at issue, which rightfully belong to the Plaintiffs and the Class Members; and which in equity and good conscience Defendant should be required to return to the Plaintiffs and the Class Members.

56.     Defendants have deprived Plaintiffs of the ownership of their money.

57.     Equity and justice require that Defendants refund the money rightfully belonging to Plaintiffs and the Class Members.

58.     Defendants have no legal or equitable right to the money received.

59.     Defendants' conduct has caused Plaintiffs to retain the service of the undersigned attorneys to represent the Plaintiffs and the Class Members in this action and Defendants are therefore responsible for attorneys' fees and costs as provided for by *F.S. 627.428* and/or by law.

WHEREFORE, Plaintiffs respectfully request this Court to take jurisdiction of the parties above, certify this matter as a class action, and grant Plaintiffs the following relief:

Plaintiffs and the Class Members demand judgment against Defendants for damages in an amount to be proven at trial, including actual damages, any statutory damages and/or penalties provided by law, refund of premiums paid, in whole or part, interest, attorneys' fees and costs pursuant to *F.S. 627.428*, together with declaratory and injunctive relief and any other equitable or further relief this Court deems proper to require Defendants to comply with applicable Florida law in connection with the sale of add-on ancillary insurance products.

## COUNT III.: INJUNCTIVE, DECLARATORY, AND OTHER EQUITABLE RELIEF AS TO ALL DEFENDANTS

60. The allegations of paragraphs 1 through 43 of this Third Amended Complaint are fully incorporated herein by reference.

61. Plaintiffs and the Florida Class Members remain subject to Defendants' unlawful actions in signing Plaintiffs and the Class Members up for ancillary insurance products and renewing said ancillary insurance contracts with the semi-annual or annual renewal of each automobile insurance policy, which renewals are ongoing and continuing.

62. Unless prevented by this Court, Defendants will continue to violate the law and sign Plaintiffs and Class Members up for said ancillary insurance products, whether at the inception of or renewal of existing contracts of automobile insurance.

63. Plaintiffs and the Class Members are entitled to declaratory, injunctive and other appropriate equitable relief to require Defendants to obey and comply with the applicable Florida laws in connection with the sale of and maintenance of said ancillary insurance product contracts.

64. Although Plaintiffs and the Class Members have an adequate remedy by damages for Defendants' past illegal conduct and activities, the same have no adequate legal remedy to

preclude Defendants from continuing to unlawfully add on ancillary insurance products to their policies of automobile insurance in the future.

65.     Plaintiffs and the Class Members, without the requested injunctive relief, will be irreparably harmed by being subjected to add-on sales of ancillary insurance products in the future by Defendants.

66.     There will be no harm to Defendants as a result of being ordered not to violate Florida law with respect to the add-on sales of ancillary insurance products to automobile insurance policies in the future; whereas, Plaintiffs and the Class Members will be irreparably harmed by being subjected to future unlawful add-on sales of ancillary insurance products. Balancing the harms requires that injunctive relief be provided to the Plaintiffs.

67.     The public interest weighs in favor of the requested injunctive relief because it favors requiring the Defendants to comply with the Insurance Code which is clothed in the presumption of preserving and protecting the public interest and rights of Florida consumers and favors protecting Florida consumers from violations of the Florida Insurance Code, which was written with such protective purposes in mind.

WHEREFORE, Plaintiffs respectfully request this Court to take jurisdiction of the parties above, certify this matter as a class action, and grant Plaintiffs the following relief:

Plaintiffs and the Class Members demand judgment against Defendants for damages in an amount to be proven at trial, including actual damages, any statutory damages and/or penalties provided by law, refund of premiums paid, in whole or part, interest, attorneys' fees and costs pursuant to *F.S. 627.428*, together with declaratory and injunctive relief and any other equitable or further relief this Court deems proper to require Defendants to comply with applicable Florida law in connection with the sale of add-on ancillary insurance products.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as a matter of right on all counts

in this Third Amended Complaint.

Respectfully submitted,


**/S/ SUSAN L. LAWSON, ESQUIRE**
SUSAN L. LAWSON, ESQUIRE
LAWSON & ASSOCIATES, P.A.
230 East Davis Boulevard, Suite 200
Tampa, Florida 33606
Telephone:  (813) 251-5297
Facsimile:  (813) 251-5786
Email: personalinjurylawyer@earthlink.net
Florida Bar No.: 139769




**/S/ RICHARD A. BOKOR, ESQUIRE**
RICHARD A. BOKOR, ESQUIRE
RICHARD A. BOKOR, P.A.
Counsel for Plaintiffs
230 East Davis Boulevard
Tampa, Florida 33606
Telephone:  (813) 251-1000
Facsimile:  (813) 254-6327
Email: Richard@bokorlaw.com
Florida Bar No.: 106580

**/S/ CHARLES VACCARO, ESQUIRE**
LIDSKY, VACCARO & MONTES,
ATTORNEYS AT LAW, P.A.
145 East 49th Street
Hialeah, FL 33013
Telephone: (305) 822-2100
FAX: (305) 818-9101
Florida Bar No.: 604320

20

Charles@lidskylaw.com